No. 7496.

COMPTON ET AL. *v.* PRUITT.

| 88 | 171 |
| 150 | 110 |
| 150 | 113 |

WIDOW.—*Decedents' Estates.—Administrator's Sale of her Interest in Lands to Pay Debts.*—An administrator can not, without a widow's consent, sell her interest in lands of which her husband died seized, to make assets to pay debts.

SAME.—*Default.—Title.*—If a widow be made defendant to a proper petition to sell such lands; her default gives no power to sell her interest, and a purchaser does not acquire even color of title against her, and any attempt to sell her interest is a nullity.

SAME.—*Action to Recover Land Sold by Administrator.—Statute of Limitations.*— The fourth clause of sec. 293, R. S. 1881, does not apply to an action by a widow to recover from a purchaser at administrator's sale her interest in lands of which her husband died seized.

SAME.—*Estoppel.*—Mere receipt of part of the proceeds of such sale as part of her distributive share of her husband's estate will not estop her from asserting her right, as widow, in the land.

SAME.—*Partition.*—There is no power to set off to a widow, without her consent, one of several tracts of land, of which her husband died seized, in lieu of her interest in each.

From the Johnson Circuit Court.

*G. M. Overstreet, A. B. Hunter, C. Byfield* and *D. W. Howe,* for appellants.

*G. M. Overstreet, Jr., S. P. Oyler* and *T. W. Woollen,* for appellee.

BICKNELL, C. C.—This was an action for partition. The appellee alleges in her complaint that her husband, John J. Pruitt, in the year 1861, died intestate, seized of the lands in controversy, whereby she became the owner of one-third thereof in fee, and that the defendants are tenants in common with her, claiming some interest, the nature of which is unknown to her.

The defendants filed a demurrer to the complaint for want of facts sufficient, and it was overruled. The defendants, except John A. Thompson, filed an answer in six paragraphs, to wit:

1. A general denial.

2. Admitting that the plaintiff is John J. Pruitt's widow, disclaiming as to twenty-five acres, more or less, mentioned in the complaint as parcel. No. 12, and as to the residue alleging that Pruitt's administrators, in 1862, obtained from the court of common pleas of Johnson county (that being the proper county) an order to sell the entire fee simple thereof, to make assets to pay debts, and did so sell the same to divers persons, who paid the purchase-money; that said sales were confirmed by said court, and that, in pursuance of the order of said court, said administrators made deeds in fee simple to the purchasers, respectively; that the plaintiff was made a party defendant in the proceedings to sell said lands, and had due notice thereof, and that the said lands have subsequently become vested in the defendants.

3. This paragraph states the same facts as the second paragraph, admits that John J. Pruitt died seized of the lands, and avers that, upon the execution and approval of their deeds, said purchasers took possession of the lands by them bought respectively, and that, for more than ten years, they and their grantees, etc., have had possession thereof, claiming the entire fee simple, with full knowledge of the plaintiff, who was all the time of full age and under no legal disability.

4. This paragraph states the same facts as the preceding paragraphs, and avers that the estate of said John J. Pruitt has been finally settled, and the balance remaining after pay-

ment of debts and expenses has been distributed, the plaintiff receiving as her share one-third of said balance, to wit, $2,156.66, of which $493.47 was part of the proceeds of the land mentioned in the complaint as parcels Nos. 1 to 5, inclusive; and $526.67 was part of the proceeds of parcels Nos. 6 to 10 inclusive; and $115.51 was part of the proceeds of parcel No. 11; and that the remainder of said proceeds was, with plaintiff's knowledge and consent, applied in payment of debts of said decedent and distributed among his heirs; that said plaintiff has retained all the moneys so distributed to her; that said estate was finally settled in 1866, three years after said sales, and that the remaining real estate of said decedent was divided between his heirs and the plaintiff; that, until the commencement of this suit, neither said purchasers nor any of the defendants had any knowledge of any interest or claim on the part of the plaintiff in or to said land; that she, all the time since said sales, has resided upon a farm adjoining said lands, and had full knowledge of all the foregoing facts, and never made any claim to said lands. This paragraph contained, also, a specific denial of every allegation in the complaint not therein specifically admitted, and it contained some allegations that were stricken out, to wit, that the administrators represented that they were authorized by the court, with plaintiff's consent, to sell the entire fee simple of said lands, and that said purchasers believed such representation, and without such belief would not have purchased, etc., and that said John J. Pruitt died seized of 1,600 acres of land, worth $15,000.

5. This paragraph does not differ substantially from the fourth paragraph. It contained originally some allegations that were stricken out, to wit, that John J. Pruitt died seized of 1,600 acres of land worth $50,000, and that of said land his heirs still own an "amount which, with the amount already set off" to the plaintiff in partition, largely exceeds in value the one-third of all of said decedent's lands.

6. No question is raised by appellants in their brief as to

the sixth paragraph of said joint answer, and they say it need not be further noticed.

The plaintiff demurred to each of the special paragraphs of said joint answer, and the demurrers were sustained as to the second and third paragraphs, and overruled as to the fourth, fifth and sixth paragraphs.

The defendant John A. Thompson answered separately, in three paragraphs, to wit:

1. A general denial.

2. Admitting the widowhood of the plaintiff, and that her husband died seized of parcel No. 12, and averring that this defendant had bought the same from her husband in his lifetime, and that in 1862 his administrators brought suit against this defendant and others to compel the specific execution of such purchase, and made the plaintiff a party defendant in such suit, and caused her to be duly notified thereof; that in such suit a commissioner was appointed, who conveyed to this defendant said parcel No. 12; that defendant disclaims as to the residue of said lands; that he took possession of parcel No. 12 in the lifetime of said decedent, and has had possession for ten years, claiming the entire fee, with full knowledge of the plaintiff, who has lived in his immediate neighborhood, and has been all the time of full age and under no legal disability. This paragraph contains a denial of all the allegations of the complaint not therein admitted.

3. This paragraph states the same facts as the second paragraph, and, also, that defendant had paid $400 of his purchase-money to the decedent and $400 to his administrators, of which last sum the plaintiff received and has retained a part; that five years after the last mentioned payment said decedent's estate was finally settled, and the residue of his real estate was divided between his heirs and the plaintiff; that, although the plaintiff knew all the facts aforesaid, she fraudulently failed to notify the defendant of her claim, but stood by and made no objection to the defendant taking possession, making improvements and claiming the fee simple. To this

paragraph are annexed a certified copy of the proceedings in said suit for specific performance, and a copy of the deed of the commissioner conveying to the defendant and his heirs. and assigns said parcel No. 12, to have and to hold forever as. fully and completely as the said James J. Pruitt had held it. at the time of his death. This paragraph also contained al- legations that were stricken out on motion, to wit, that when defendant accepted said deed he believed he was acquiring the entire fee simple, and knew nothing of the plaintiff's claim ; and that said decedent died seized of 1,600 acres of land, worth $50,000, of which 450 acres were sold to make assets. This paragraph also contains a denial of all facts alleged in the complaint and not therein admitted.

The plaintiff demurred to the second and third paragraphs of this separate answer, and these demurrers were overruled.

The plaintiff replied to said joint answer in five paragraphs, and to said separate answer in four paragraphs. The replies. to the joint answer consist, chiefly, of the general denial and of admissions and denials of facts averred in the answer. They state that plaintiff never received or receipted for any of said purchase-money; that all of said purchase-money was used in payment of debts, together with money collected by said administrators out of the rents and profits of the lands, and that she receipted for her share only of the residue of the money so collected, to wit, $2,156.66 ; that the plaintiff was a party to the proceeding to sell the lands as required by stat- ute, and was notified by the usual publication ; that in no part of said proceedings was there any representation or claim that the plaintiff's interest as widow was to be sold ; that she never consented to the sale of her interest, and that the estate was abundantly able to pay all its debts without the sale of plain- tiff's interest; that in said proceeding to sell she was de- faulted, and that said sale was a private sale on a notice that the land would be sold, without defining what interest would be sold.

The plaintiff replied to said separate answer in four para-

graphs.    These replies consisted of the general denial and admissions and special denials of the facts stated in said separate answer.    They averred that the plaintiff never took any of the purchase-money of parcel No. 12, and never signed any receipt for her distributive share, and never authorized any-body to do so for her; that the proceeds of said sale were used to pay debts; that the rents and profits of the decedent's land collected by said administrators were $9,551.78; that plaintiff received and receipted for $2,156.66, which was her share of the residue of said rents and profits after the debts were paid; and that in said suit for specific performance neither the petition, nor the order for a deed, nor the deed contained any representation that the plaintiff's one-third of said land was to be conveyed, nor that the court had any jurisdiction to require the same to be conveyed.

Afterwards, by leave of court, the defendants, except John A. Thompson, filed a cross complaint against the plaintiff and others, setting up, substantially, the same facts pleaded in the fourth and fifth paragraphs of the joint answer.    A demurrer to this cross complaint was sustained; its prayer was that the plaintiff's share of said lands, as widow, be assigned to her in the other lands of which the decedent died seized.    The appellants, in their brief, say : " We pleaded by way of cross complaint for greater safety, but did not think then, nor do we think now, that it was necessary."

The issues were tried by a jury, who returned the following verdict : " We, the jury, find for the plaintiff Jane Pruitt as to all the defendants."

The defendant John A. Thompson moved for a new trial, and the other defendants moved jointly for a new trial.    These motions were overruled, judgment was rendered upon the verdict that the plaintiff is the owner of one-third of the lands in controversy, and for partition and for the appointment of commissioners of partition.    These commissioners afterwards made their report of partition, which was confirmed by the

court, and final judgment was rendered for the plaintiff. The defendants appealed. They assign errors:

1. In overruling the demurrer to the complaint.

2, 3 and 4. In sustaining the demurrers to the second and third paragraphs of the joint answer of all the defendants except John A. Thompson.

5. In sustaining the motion to strike out parts of said joint answer.

6. In sustaining the motion to strike out part of the separate answer of John A. Thompson.

7. In sustaining the demurrer to the cross complaint.

8. In overruling the motion of John A. Thompson for a new trial.

9. In overruling the motion for a new trial of all the defendants except John A. Thompson.

The first of these specifications of error is not alluded to in the appellants' brief; it is, therefore, regarded as waived. The seventh specification is expressly waived by the appellants.

The principal question in the case is, can an administrator, without the widow's consent, sell her interest in the land of which her husband, the decedent, died seized, in order to make assets to pay the decedent's debts?

Section 17 of the statute of descents declares that "If a husband die testate, or intestate, leaving a widow, one-third of his real estate shall descend to her in fee simple, free from all demands of creditors." 1 R. S. 1876, p. 411.

Section 75 of the decedents' act declares that "Whenever any executor or administrator shall discover that the personal estate of the decedent is insufficient to pay the liabilities thereof, the court having jurisdiction shall order to be sold the whole or any part of the real estate of the deceased." 2 R. S. 1876, p. 519.

These sections give the court no authority to sell the wife's land. When the husband dies his wife's one-third is no longer "the real estate of the deceased." The statute requires

that the proceeding to sell shall be by petition, which shall contain "A description of the real estate of the deceased, liable to be made assets for the payment of his debts, or so much thereof as the executor or administrator may deem it necessary to sell." Sec. 75, *supra,* clause 3.

In this case the petition stated that the decedent died seized of the land, etc., leaving a widow. That was equivalent to a statement that only two-thirds of it was liable to be made assets. It notified the court and all parties in interest to that effect, as fully as if the language had been that of clause 3, *supra,* and had stated expressly that the land to be sold was two-thirds of the land described. So the notice of the application to sell stated that the administrators had filed their petition to sell the real estate of the decedent, nothing more. Such a petition and notice did not inform the widow of an intended attack upon her rights, and she was guilty of no laches in failing to appear in the proceeding. She had a right to presume that the land liable to be made assets was the only subject of the petition, and against such a petition she had no defence. But the administrators made a sale and the court confirmed it, and the commissioner of the court made deeds to the purchasers, "to have and to hold as fully and completely as the said John J. Pruitt had and held in his lifetime and at the time of his death."

In *Hanlon* v. *Waterbury,* 31 Ind. 168, the petition, as in the present case, stated that the decedent left a widow, and the land was sold as in the present case. This court said: "The widow's interest was not liable for the decedent's debts. The court did not decree its sale, and could not legally do so." The court further said: "The petition * stated the fact that the decedent left the appellee, his widow, surviving; and the purchasers * must be presumed to have known that she was entitled to one undivided third of the lots, which was not subject to sale for the payment of the husband's debts; and hence they can not claim to be purchasers in good faith, be-

lieving they were thereby acquiring unencumbered titles to the whole of the lots."

In *Unfried* v. *Heberer*, 63 Ind. 67, where a widow had been defaulted in an action of foreclosure, she being made a party as an heir, nothing being stated in the complaint as to her right as widow, this court said: "When the said Anna made default in the action for foreclosure, nothing was taken against her as confessed, nor could have been, which was. not alleged in the complaint; and, as nothing was alleged hostile to her claim as widow, it follows that nothing concerning her claim as such widow was concluded against her by the judgment." So in *Elliott* v. *Frakes*, 71 Ind. 412, where the widow died after devising her one-third, and there was a proceeding to sell the husband's land to make assets, and the widow and her devisees were made parties as heirs of the husband, and a sale had been made of all the land, this court said the court had no power to order the sale of more than two-thirds of the land for the payment of the decedent's debts. If the order of sale purported to authorize and direct the sale of the whole tract, it was simply inoperative and void as against the interest which descended to the widow. See, also, *Armstrong* v. *Cavitt*, 78 Ind. 476.

These cases show that, in Indiana, under the ordinary statutory proceeding to sell a decedent's land to make assets, the attempted sale of the widow's land is a mere nullity and has no effect upon her rights. She remains a tenant in common with the purchaser. His possession *prima facie* is not adverse to her title. He not only has no title, but as against her he has no color of title, because, as stated in *Hanlon* v. *Waterbury, supra,* he is a purchaser with notice of her claim. In the case just cited it appeared that the $300 allowed the wife by statute was received by her out of the proceeds of the sale. This court held that she was not thereby estopped from asserting her right to her one-third of the land, which was not liable to the husband's debts.

In *Elliott* v. *Frakes, supra,* it was held that the fact that

the devisees of the widow's one-third, who were also the heirs of the husband, had received as heirs their distributive shares of the proceeds of the sale did not estop them from asserting their title as devisees against the purchaser at such sale. .See also, as to the question of estoppel, *Unfried* v. *Heberer, supra,* where it was held that an answer, that the plaintiffs were present at the sheriff's sale and permitted the defendants to become the purchasers, without setting up any claim on their part, was insufficient.

The appellants claim that four questions arise in this case, of which the first is, Can the sale ordered by the court be collaterally attacked? The answer to this is, as shown by the foregoing authorities, that the sale is undoubtedly valid as to the land of the decedent, which was liable to be sold for the payment of his debts; but it did not purport to be a sale of the wife's land, and had no effect upon her interest.

The second question is, is the widow barred by the fourth specification of the statute of limitations, section 211 of the code of 1852? That specification is as follows:

" *Fourth.* For the recovery of real property sold by executors, administrators, guardians or commissioners of a court, upon a judgment specially directing the sale of property sought to be recovered, brought by a party to the judgment, his heirs, or any person claiming a title under a party, acquired after the date of the judgment—within five years after the sale is confirmed."

The interest sought to be recovered in this suit is the wife's interest in the land of which her husband died seized; that interest was not " specially directed to be sold." The sale of it was neither applied for nor ordered, and no question of color of title as to the land of the wife arises. The fourth specification, *supra,* is not applicable to this case.

The third question is, is the widow estopped? The cases already cited show that, in Indiana, in cases like the present case, the mere receipt of the proceeds of the sale, as part of her distributive share of the husband's estate, will not create an

estoppel, and that even presence at such a sale without objection will not work an estoppel. Certainly, the widow could not be estopped by any representations of the administrators, and there is nothing in any non-action of the widow from which her consent to the sale could be presumed, or which had any tendency to mislead the purchasers, who had from the petition ample notice to put them upon enquiry as to the widow's rights.

The fourth question is, is the widow in equity compellable to take her interest in the land of the decedent now owned by his heirs?

The case of *Hanlon* v. *Waterbury, supra,* shows that there is no power to set over any one of several tracts to a widow in lieu of her interest in each, without her consent. A woman can not be deprived of her land without her own fault and without her consent, express or implied. As to the claim that the receipt of the proceeds of the sales by the woman amounted to a ratification of the sale, the receipt of such proceeds was denied by the replies, and the verdict of the jury thereon was in favor of the plaintiff.

It sufficiently appears from what has been said that there was no error in any of the matters embraced in the second, third, fourth, fifth and sixth specifications of the assignment of errors.

The first and seventh specifications having been heretofore disposed of, the only remaining matters to be considered are the eighth and ninth specifications, alleging error in overruling the motions for a new trial. Upon the joint motion for a new trial the appellants, in their brief, make the following statement: "The grounds of the motion relate principally to the instructions given and evidence admitted and excluded. The motion for a new trial and the bill of exceptions show the evidence offered and excluded, and the instructions refused and given, in regard to which complaint is made. We do not care to particularize as to these rulings. The most casual reading of those portions of the transcript to which

we have directed attention will show that the court below erred in overruling the motion for a new trial, unless we are altogether mistaken in our views of the law heretofore expressed."

Such a statement as this is not a discussion of the error assigned in overruling the motion. Where reasons for a new trial are not discussed in the brief they are regarded as waived. *Mackenzie* v. *Board, etc.,* 72 Ind. 189 ; *English* v. *State, ex rel.,* 81 Ind. 455. Certainly, upon such a general presentation, the court is not required to state at length the particular rulings; it is enough to say that it appears from what has been already said, that the appellants were " mistaken in their views of the law," and that no error was committed in overruling the joint motion for a new trial; and we think it sufficiently appears, from what has been heretofore said, that there was no error in overruling the separate motion for a new trial. We find no error in the record. The judgment ought to be affirmed.

Per Curiam.—It is therefore ordered, on the foregoing opinion, that the judgment of the court below be and it is hereby in all things affirmed, at the costs of the appellants.