Filed April 16, 1896.

---

No. 1,932.

KEMPH v. BELKNAP, ADMINISTRATOR, ET AL.

DESCENT.—*Rights of Surviving Husband.—Statute Construed.*—The one-third share of a deceased wife's real property taken by her husband under section 2642, R. S. 1894 (section 2485, R. S. 1881), giving him such share in lieu of the tenancy by curtesy allowed by the common law, is not, either in his hands or in the hands of his grantee, subject to the payment of general debts of the estate of the deceased wife.

From the Clinton Circuit Court.

*Palmer & Palmer*, for appellant.

*D. S. Holman* and *Claybaugh & Claybaugh*, for appellees.

LOTZ, J.—The facts of this case are substantially as follows: On the 16th day of December, 1890, Catherine Baum was the owner, in her own right, of lot 18 in J. W. Pence's addition to the city of Frankfort, Clinton county, Indiana. She was then a married woman, the wife of Joseph Baum. On that day she executed her note to Henry M. Baum for the sum of $329.60 and secured the same by mortgage on said lot, her husband joining her in the execution of the mortgage. On the 12th day of October, 1892, Catherine Baum died intestate the owner of said lot, leaving surviving her, her husband, Joseph Baum, and certain children and grandchildren as her heirs-at-law, among whom was the appellant, Rebecca Kemph. On the 16th day of October, 1892, Joseph Baum, for a valuable consideration, conveyed his interest in the lot to Rebecca Kemph.

Myron H. Belknap was subsequently appointed administrator of the estate of Catherine Baum, and as such he filed his petition and obtained an order from the circuit court of Clinton county to sell the undivided two-thirds interest in said realty to make assets to pay the debts of said estate, and in pursuance of such order sold the same to appellee, Henry M. Baum, for the sum of $525.00. After Henry M. Baum became the owner of the undivided two-thirds of said lot, he instituted this action against Rebecca Kemph for the partition of the same. Issue was joined and the cause submitted to the court for trial. The court found that Henry M. Baum was the owner of the undivided two-thirds, and that Rebecca Kemph was the owner of the undivided one-third, and that the lot was not susceptible of division without injury, and appointed a commissioner to make sale of the same, and ordered the commissioner to pay the moneys realized into court.

The commissioner appointed sold the lot to Henry M. Baum for the sum of $700.00, and, after paying the costs, there remained the sum of $631.85, which he paid to the clerk of the court.

After the commissioner filed his report, Myron H. Belknap, as the administrator of the estate of Catherine Baum, appeared and filed his petition in such proceeding, and showed to the court that Catherine Baum left no personal estate whatever, and that the only property owned by her was this lot 18; that, as such administrator, he realized from the sale of the undivided two-thirds thereof the sum of $525; that said estate was indebted on account of preferred claims for costs of administration, expenses of last sickness and funeral expenses, in the sum of $197.02, and on account of taxes in the sum of $108.16, and on account of the mortgage note due Henry M. Baum, in the sum of $392.85, in all in the sum of $698.03, and that there was a deficiency of the funds in his hands, necessary for the payment of such indebtedness, in the sum of $173.03. He asked the court to order the clerk to pay him that sum out of the share due Rebecca Kemph. The court made this order as prayed for, and this is the ruling complained of in this appeal.

The general rule is that when a person dies his property must go in satisfaction of his debts, and the heirs take only the surplus, if any.

The rule, however, is different as to a surviving wife. The statute, section 2640, R. S. 1894 (2483, R. S. 1881), provides, "If a husband die testate or intestate, leaving a widow, one-third of his real estate shall descend to her in fee-simple, free from all demands of creditors," etc. The rights given the widow under this statute are in lieu of her dower rights at common law, tenancies by dower being abolished by statute in this State. By the statute of 1853 the wife's interest in the

property was increased and the husband's rights therein diminished.. But the rights of the survivor in the property of the other were increased. The purpose seems to be to make more ample provision for the family upon the death of either. Dower by common law is the provision which the law makes for the widow out of the lands or tenements of her husband for her support and the nurture of her children. Dower has always been favored by the law, and next to life and liberty has been regarded as sacred. The provision or substitute for dower should receive the same liberal construction formerly given to dower. *Mansur* v. *Hinkson*, 94 Ind. 395.

Accordingly, it has been held, by a long line of decisions, that a widow takes the interest which descends to her, absolutely; that it is subject only to liens for taxes, purchase-money, and mortgages in which she has joined; that she is entitled to have all the personal estate and the other two-thirds of the real estate marshaled and applied to the discharge of such liens that her interest may be preserved and secured to her. *Perry* v. *Borton*, 25 Ind.. 274; *McCord* v. *Wright*, 97 Ind. 34; *Elliott* v. *Cale*, 113 Ind. 383; *Purviance* v. *Emley*, 126 Ind. 419. Do the same rules apply to the interest which a surviving husband takes in the real estate of his deceased wife? Section 2642, R. S. 1894 (section 2485, R. S. 1881), provides, "If a wife die testate or intestate leaving a widower, one-third of her real estate shall descend to him, subject, however, to its proportion of the debts of the wife contracted before marriage," etc.

By the common law and the law of Indiana prior to 1853, the husband became the owner of all the personal property of the wife by the marriage. He also became entitled to the rents and profits of all her estate. It all became a common stock for the benefit.

of the family. *Noble, Exr.*, v. *Noble*, 19 Ind. 431. Upon the death of the wife after issue born alive, the husband became entitled to an estate by curtesy in the lands of which the wife died seized. This was a life-estate in all her lands. It seems that an estate by curtesy, like a dower estate, had its origin in making provision for the support of the family and of the children born of the marriage, for one of the conditions necessary to the existence of the estate was that issue should be born which might inherit. In 1853, tenancies by curtesy were abolished by statute in this State, and the provision in lieu thereof was made by section 2642, *supra*.

It would seem from this that the substitute for curtesy should receive a liberal construction for the benefit of the family and surviving children.. This section expressly provides that the interest which descends to the husband shall be subject to its proportion of the debts of the wife contracted before marriage. *Expressio unius, est exclusio alterius*: the statement of one is the exclusion of another; is one of the maxims in the construction of written instruments. It is one of the cardinal rules in the construction of statutes. Broom Legal Maxims, 664. The express mention of one thing implies the exclusion of another. Under this rule of construction the mention of one class of debts by implication excludes all other classes.

A statute should be so construed, if possible, as to give sense and meaning to every part. If it was the intention of the legislature to make the widower's interest in the realty liable for all the debts of the wife, those contracted after as well as before the marriage, then there was no necessity for using the words "contracted before the marriage." These words would be

meaningless. We cannot adopt a construction that ignores the presence of these words, for they were evidently used for a purpose. We are of the opinion that it was not the intention of the Legislature to make the widower's interest in the real estate which descends to him liable for the general debts of the deceased wife. The widower, like the widow, in the descent of property from the deceased spouse, occupies a different position from that of an ordinary heir. ---

All the interest that appellant had in the realty, by virtue of being a child and heir-at-law of Catherine Baum, was exhausted by the sale of the two-thirds by the administrator. Whatever other interest she had was acquired by the conveyance from Joseph Baum. In respect thereto she occupied the same relation that he would have occupied had no conveyance been made. The two-thirds sold for more than enough to satisfy the mortgage and the taxes. It was the duty of the administrator to apply enough of the moneys realized from such sale to the satisfaction of the mortgage debt and taxes, or to take a bond from the purchaser to secure the payment and discharge of such liens. *Ryker* v. *Vawten*, 117 Ind. 425. The costs of administration and expenses of last illness and funeral expenses were not specific liens upon any part of the realty, and the widower's one-third in no event was subject to the payment of such claims. If the estate was insolvent, the administrator should have proceeded to settle it as an insolvent estate.

In no event can the property of another person be taken to satisfy the general debts or the costs of administration, the funeral expenses and expenses of last sickness. Barring the specific liens upon the realty, the widower's interest was as entirely distinct and free from the claims of creditors as if he had acquired it by conveyance from a third person. It was

error to order any part of appellant's money to be used in the payment of the general debts and claims against the estate under the facts above stated.

Judgment reversed, with instructions to sustain appellant's demurrer to the petition of the administrator and for further proceedings in accordance with this opinion.

